# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

_____

JOAN LITWIN, on behalf of herself and all
similarly situated shareholders of Human
Genome Sciences, Inc.

               Plaintiff,

        v.

HUMAN GENOME SCIENCES, INC., H.
THOMAS WATKINGS, ARGERIS N.
KARABELAS, ALLAN BAXTER, RICHARD
J. DANZIG, COLLIN GODDARD, MAXINE
GOWEN, TUAN NA-NGOC, JOHN L.
LAMATTINA, AUGUSTINE LAWLOR,
GEORGE MORROW, GREG NORDEN,
ROBERT YOUNG, GLAXOSMITHKLINE
PLC, and H. ACQUISITION CORP.,

               Defendants.

_____

**CIVIL ACTION NO. _____**

**SHAREHOLDERS' CLASS
ACTION COMPLAINT**

## SHAREHOLDERS' CLASS ACTION COMPLAINT
## FOR BREACH OF FIDUCIARY DUTIES AND AIDING AND ABETTING

## PRELIMINARY STATEMENT

1.     This is a shareholder class action brought by Joan Litwin ("Plaintiff") on behalf of herself and the public shareholders of Human Genome Sciences Inc. ("HGS" or the Company") against HGS, and HGS' directors deriving from the proposed acquisition of the publicly owned shares of HGS by GlaxoSmithKline plc ("GSK") through a $3.6 billion dollar tender offer (the "Tender Offer") announced on July 16, 2012 and scheduled to close on July 27, 2012 (the "Proposed Transaction").  The proposed tender offer is at a price of $14.25 per share.  The Tender offer is grossly inadequate.  In fact, just two months earlier HGS' Board of Directors recommended the rejection of a previous offer by GSK for $13.00 per share based on numerous factors, including that the Tender Offer "is inadequate and does not capture HGS' inherent value and growth opportunities."  The same is true for the current offer and Defendants have breached their fiduciary duties to HGS' shareholders in agreeing to a grossly inadequate price.

2.     Under the terms of the Agreement and Plan of Merger dated July 16, 2012 (the "Merger Agreement"), GSK will acquire all of the outstanding shares of common stock of HGS for $14.25 per share.  The Tender Offer represents a mere 26% premium over the high trading price of HGS in the first week February 2012 (just two months prior to GSK's private offer to acquire HGS) and a significant negative premium to HGS' 52 week high of $23.54 per share.

3.     By negotiating and accepting the Proposed Transaction, the Individual Defendants (defined below) are in breach of their fiduciary duties owed to HGS' public shareholders.  The Individual Defendants did not take all steps necessary to obtain a full, fair and adequate price for HGS' shares (including an auction) and have failed to maximize shareholder value.

4.     The Tender Offer that GSK has offered to HGS' public shareholders is grossly unfair and inadequate because, among other things, the intrinsic value of HGS' common stock is

materially in excess of the amount offered, giving due consideration to among other things the

Company's growth and anticipated operating results, net income and profitability.  As confirmed

by the Company:

- *"HGS is a fully integrated biopharmaceutical company with leading genomic and drug discovery, development, manufacturing and commercialization capabilities";*

- *BENLYSTA*, an investigational human monoclonal antibody drug, "has substantial growth opportunities";

- *"HGS' future prospects are underpinned by a robust pipeline of new products, including darapladib*"; and

- *"HGS has substantial financial assets."*

5.      The Proposed Transaction is the product of a flawed process that is designed to

ensure the sale of HGS to GSK on terms preferential to GSK, but detrimental to Plaintiff and

other public shareholders of HGS.  Plaintiff seeks to enjoin the Proposed Transaction.

## JURISDICTION AND VENUE

6.      Every issue of law and fact in this action is wholly between citizens of different

states.  Plaintiff is, and was at all times hereinafter mentioned, domiciled in and a citizen of the

state of Florida and residing in Dade County, Florida.

7.      Defendant HGS was, and is now, a corporation duly organized, incorporated and

existing under the laws of the state of Delaware and its principle place of business is in

Rockville, Maryland.  None of the Individual Defendants (identified below) are citizens of the

state of Florida.  Defendant GSK was, and is now, a corporation duly organized, incorporated

and existing under the laws of England and its principle place of business in Brentford, United

Kingdom.  Defendant H. Acquisition Corp. is a corporation duly organized, incorporated and existing under the laws of the state of Delaware and is a wholly owned subsidiary of GSK.

8.      The Merger Agreement entered into between HGS, GSK and H. Acquisition Corp. in connection with the Proposed Transaction provides that the parties to the Merger Agreement irrevocably and unconditionally submits to the exclusive jurisdiction of the Delaware Chancery and the Federal Court of the United States of America sitting in the State of Delaware for the purpose of any suit, action or proceeding arising out of the Merger Agreement or action contemplated by the Merger Agreement.

9.      The Merger Agreement further provides that the parties to the Merger Agreement irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of the Merger Agreement or action contemplated by the Merger Agreement in the Delaware Chancery Court and the Federal Court of the United States of America sitting in the State of Delaware.

10.     Plaintiff sues for damages in excess of $75,000 (exclusive of interest, fees and costs).

## PARTIES

11.     Plaintiff Joan Litwin is, and has been at all relevant times hereto, the owner of shares of the common stock of HGS.

12.     Defendant HGS is a Delaware corporation that maintains its corporate headquarters at 14200 Shady Grove Road, Rockville, Maryland.  Human Genome Sciences, Inc. operates as a biopharmaceutical company in the United States.  Its principal products include BENLYSTA for systemic lupus erythematosus; and raxibacumab for inhalation anthrax.

13.     Defendant GSK is a public company organized under the laws of England and Wales.  GSK maintains its corporate headquarters in Brentford, United Kingdom. GlaxoSmithKline plc, together with its subsidiaries, engages in the discovery, development, manufacture, and marketing of pharmaceutical products, over the counter (OTC) medicines, and health-related consumer products worldwide.  It offers pharmaceutical products in various therapeutic areas comprising respiratory, HIV, central nervous system, cardiovascular and urogenital, metabolic, anti-bacterial, oncology and emesis, vaccines, and dermatologicals.

14.     Defendant H. Acquisition Corp., is a Delaware corporation and is a wholly owned subsidiary of GSK.

15.     Defendant H. Thomas Watkins ("Watkins") is the Chief Executive Officer and President of HGS and is a member of the Company's Board of Directors.  Defendant Watkins signed the Company's May 17, 2012 letter to HGS stockholders recommending that the stockholders reject GSK's offer of $13.00 per share and not tender shares for the numerous reasons set forth herein.  Defendant Watkins also signed the Company's July 19, 2012 letter recommending that stockholders now tender their HGS shares to GSK for $14.25 per share.

16.     Defendant Argeris N. Karabelas ("Karabelas") is the Chairman of the Board of Directors of HGS, Chairman of the Finance Committee, and is a member of HGS' Compensation Committee.  Defendant Karabelas signed the Company's May 17, 2012 letter to HGS stockholders recommending that the stockholders reject GSK's offer of $13.00 per share and not tender shares for the numerous reasons set forth herein.  Defendant Karabelas also signed the Company's July 19, 2012 letter recommending that stockholders now tender their HGS shares to GSK for $14.25 per share.

17.     Defendant Allan Baxter ("Baxter") has been a director of HGS since 2001 and is a member of the Company's Nominating and Governance Committee.  Baxter maintains his offices in the United Kingdom.

18.     Defendant Richard J. Danzig ("Danzig") has been a director of HGS since 2001 and is a member of the Company's Audit Committee and Finance Committee.  Danzig maintains his offices in Rockville, Maryland.

19.     Defendant Collin Goddard ("Goddard") has been a director of HGS since 2010 and is a member of the Company's Compensation Committee.  Goddard maintains his offices in Rockville, Maryland.

20.     Defendant Maxine Gowen ("Gowen") has been a director of HGS since 2008 and is a member of the Company's Nominating and Governance Committee.  Gowen maintains her offices in Berwyn, Pennsylvania.

21.     Defendant Tuan Na-Ngoc ("Na-Ngoc") has been a director of HGS since 2005 and is the Chair of the Company's Audit Committee.  Na-Ngoc maintains his offices in Cambridge, Massachusetts.

22.     Defendant John L. LaMattina ("LaMattina") has been a director of HGS since 2008 and is a member of the Company's Compensation Committee and Finance Committee.  LaMattina maintains her offices in Boston, Massachusetts.

23.     Defendant Augustine Lawlor ("Lawlor") has been a director of HGS since 2004 and is the Chair of the Company's Compensation Committee and is a member of the Finance Committee.  Lawlor maintains his offices in Cambridge, Massachusetts.

24.      Defendant George Morrow ("Morrow") has been a director of HGS since 2011 and is a member of the Company's Nominating and Governance Committee.  Morrow maintains his offices in Thousand Oaks, California.

25.      Defendant Greg Norden ("Norden") has been a director of HGS since 2011 and is a member of the Company's Audit Committee.  Norden maintains his offices in Madison, New Jersey.

26.      Defendant Robert Young ("Young") has been a director of HGS since 2005 and is the Chair of the Company's Nominating and Governance Committee.

27.      Defendants identified in paragraphs 15 through 26, *supra*, are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

28.      HGS is a bio pharmaceutical company, founded in 1992, specializing in the development of protein and antibody drugs.  In recent years, HGS has drugs under development to treat such diseases as hepatitis C, systemic lupus, erythematosus, anthrax and cancer.

29.      GSK is a British multinational biopharmaceutical, biologics, vaccines and consumer healthcare company headquartered in London, United Kingdom.  GSK is one of the world's largest pharmaceutical companies.

30.      According to the Schedule 14D-9 filed with the SEC on May 17, 2012, HGS and GSK have an on-going commercial relationship.  In 2006, HGS entered into an agreement with GSK for the co-development and co-commercialization of BENLYSTA.  Under the BENLYSTA agreement, HGS and GSK share phase 3 and 4 development costs, sales and marketing, and profits equally.  HGS and GSK have additional agreements relating to a number of other drugs in various stages of development, including, darapladib, albiglutide and rilapladib.

31.     In April 2012, the Chief Executive Officer of GSK, Andrew Witty, made an unsolicited proposal on behalf of GSK to acquire all of HGS' Company shares at $13.00 per share.  The board rejected GSK's proposal as not reflecting the inherit value of HGS, noting in particular the significant value of BENLYSTA and the potential value of darapladib.

32.     On May 17, 2012, HGS issued a letter to shareholders regarding the $13.00 unsolicited Tender Offer made by GSK.  According to the May 17th press release, HGS' Board unanimously determined that the Tender "Offer is inadequate, undervalues the Company and is not in the best interest of HGS stockholders."  In particular, the HGS Board expressed the following comments:

- **The Offer is inadequate and does not capture HGS' inherent value and growth opportunities.**  The Board believes that the Offer is inadequate and undervalues HGS because it does not capture the inherent value in the Company's assets, operations and growth opportunities, including the significant upside potential represented by BENLYSTA and the Company's valuable pipeline.

  - *HGS is a fully integrated biopharmaceutical company with leading genomic and drug discovery, development, manufacturing and commercialization capabilities.*  HGS' leading genomic and drug discovery platform has yielded BENLYSTA and darapladib, each with multi-billion dollar peak sales potential.  HGS continues to lead the clinical and regulatory development of BENLYSTA in the U.S., including the development of new indications for BENLYSTA in autoimmune diseases.  HGS has state-of-the art biologics manufacturing capabilities, extensive experience in developing manufacturing processes to support early and late-stage clinical development programs, and deep sales and marketing experience with the complex and attractive systemic lupus erythematosus ("SLE") market.  The Board believes that this combination of capabilities – combining discovery and development capabilities with biologics manufacturing and commercialization expertise – is valuable for biotechnology companies and not fully reflected in the offer.

  - BENLYSTA has substantial growth opportunities.

    * * *

  - *HGS' future prospects are underpinned by a robust pipeline of new products, including darapladib.*

  - *HGS has substantial financial assets.*

* * *

- **The Offer price does not reflect the substantial benefits of a business combination to GSK.**

* * *

- **GSK timed its Offer to opportunistically to capitalize on recent Share price dislocation.**

* * *

- **GSK timed its Offer to opportunistically capture for itself the significant upside opportunity from upcoming value-driving products.**

* * *

- **The Offer values HGS at a price below recent trading levels.**  The market price of HGS common stock has remained above the Offer price of $13.00 per Share since the public announcement of GSK's proposal on April 19, 2012.  The closing price per Share on the NASDAQ Global Select market on May 16, 2012, the last trading day prior to the date of this Statement, was $14.25 which is 9.6% greater than the Offer price of $13.00 per Share.

- **The Board has instructed HGS' management, with the assistance of HGS' advisors, to explore strategic alternatives to maximize stockholder value.**

* * *

- **Even though HGS invited GSK to participate in a process that would give all interested parties an opportunity to participate, GSK chose to bypass the process and commenced the unsolicited Offer.**

* * *

- **HGS has received inadequacy opinions from its financial advisors.**

33.     On July 16, 2012, the Company announced that GSK had revised its offer to $14.25 per share.  Despite the numerous items the Company raised in its May 17th letter to shareholders, the Company entered into the Merger Agreement and Proposed Transaction which would result in the acquisition of all outstanding shares of HGS by GSK at the inadequate price

of $14.25 per share.  Moreover, the closing of the Tender Offer was announced for July 27, 2012.

34.     The process and consideration provided to HGS shareholders is coercive and grossly inadequate.  The material provided to HGS shareholders is sparse in detail in that it only gives generic explanations regarding the reasons for recommending the Proposed Transaction to HGS shareholders and provides no analysis as to the basis of the Financial Advisors Fairness Opinions.  Moreover, it only gives HGS shareholders 6 days to review the recommendations and make an informed decision as to whether to tender their shares.

35.     The consideration provided to HGS shareholders as a result of the Tender Offer is grossly inadequate.  Beyond the detailed reasons, set forth in the Company's May 17th letter, the Tender Offer fails to provide any meaningful premium.  As stated on May 17th, "the Offer values HGS at a price below recent trading levels.  The market price of HGS common stock has remained above the offer price of $13.00 per share since the public announcement of GSK's proposal on April 19, 2012."  Additionally, the Tender Offer represents a mere 26% premium over the high trading price of GHS in February 2012, and a significant negative premium to HGS' 52 week high of $23.54 per share.  Moreover, analysts following the Company have a projected target price of $18.00 per share.

36.     Recent press releases issued by the Company evidence the Company's current business success and that the Company is well-positioned to achieve financial success in the upcoming quarters.  On October 25, 2011, the Company announced financial results for the third quarter ended September 30, 2011.  According to H. Thomas Watkins:

> "We are seeing solid progress in the trial and adoption of BENLYSTA treatment
> for systemic lupus by rheumatologists in the United States . . . .  The number of
> key accounts that have begun to order BENLYSTA has increased substantially.

The number of countries in which BENLYSTA is available continues to increase. We and GSK look forward to making BENLYSTA available around the world."

37.     Thereafter, on February 27, 2012, the Company announced fourth-quarter and full-year financial results for the full year ended December 31, 2011.  According to H. Thomas Watkins:

"The approval and launch of BENLYSTA for systemic lupus in 2011 brings Human Genome Sciences closer to our long-standing goal of achieving profitability and sustained growth into the future . . . .  We have seen steady quarter-to-quarter progress with BENLYSTA sales, and we believe BENLYSTA is on its way to playing a major role in improving the standard of care for SLE patients."

Moreover, according to David Southwell, HGS' Executive Vice-President and Chief Financial Officer:

"We look forward to our first full year of BENLYSTA sales in 2012 . . . .  With $881 million in cash and investments on hand at the end of 2011, we have a strong financial position and will continue to invest in the successful worldwide commercialization of BENLYSTA."

38.     On April 24, 2012, the Company announced financial results for the first-quarter ended March 31, 2012.  Again, the Company announced favorable news regarding its products and financial position.  According to H. Thomas Watkins:

"We continue to see quarter-to-quarter progress in BENLYSTA sales. . . .  A growing body of evidence from our market research indicates that BENLYSTA is making a difference for patients with systemic lupus – and that rheumatologists who have the most experience with BENLYSTA are the ones who are most impressed with its efficacy.  As lupus-treating physicians gain experience with BENLYSTA, we believe their use of BENLYSTA will expand to greater numbers of patients."

**FINANCIAL RESULTS**

HGS reported revenues for the quarter ended March 31, 2012 of $47.1 million, compared with revenues of $26.6 million for the same period in 2011.  Revenues included $31.2 million recognized from sales of BENLYSTA, $6.1 million recognized from sales and deliveries of raxibacumab to the U.S. Strategic

National Stockpile and $9.1 million recognized from manufacturing and development services other than raxibacumab.

Moreover, according to David Southwell:

> "HGS continues to have a strong financial position . . . .  BENLYSTA will continue to be our company's most important driver of growth for the next several years.  Supporting its worldwide commercial progress and further development remain our most important financial priority."

39.     In a May 2012 "Investor Overview" prepared by Human Genome Science, HGS issued further disclosures demonstrating the gross unfairness of the Proposed Transaction:

- HGS has significant value in its assets, operations, and growth opportunities;

- BENLYSTA is a blockbuster in the making with rheumatologist projecting 24% patient share.

- BENLYSTA has significant long-term potential (potential worldwide peak sales between $2.8-$3.5 BN).

- Darapladib is a multi-billion Dollar opportunity.

- Darapladib represents a significant upside opportunity for HGS shareholders.

### Coercive Nature of the Proposed Transaction

40.     The Individual Defendants have breached their fiduciary duties to the public shareholders by failing to protect the HGS franchise and failing to protect the interests of the public shareholders from the coercive nature of the Proposed Transaction.

41.     Moreover, to the detriment of the Company's shareholders, the terms of the Merger Agreement substantially favor GSK and are calculated to unreasonably dissuade potential suitors from making competing offers.

42.     Pursuant to Section 6.6 of the Merger Agreement, upon termination of the Merger Agreement, under certain specified circumstances, HGS will be required to pay a termination fee of $115,000,000 (the "Termination Fee") to GSK, a breakup fee purely designed to thwart

competing bids for the Company or a decision by HGS' Board to rejecting GSK's Tender Offer

for a superior offer.

43.     In addition, the Merger Agreement contains a "No-Solicitation" provision which

impairs HGS' ability to seek out more beneficial transaction partners, to the detriment of

Plaintiff and the Class.  Section 5.2 of the Merger Agreement sets forth:

> (a)     Subject to this Section 5.2(a), the Company shall not, nor shall it
> permit any of its controlled Affiliates to, nor shall it authorize or permit any of its
> or its controlled Affiliates' directors, officers, employees, investment bankers,
> attorneys, accountants or other advisors or representatives (collectively,
> "**Representatives**") to, directly or indirectly, (i) solicit, initiate, propose or
> knowingly encourage, or take any other action to knowingly facilitate (including
> redeeming, amending or waiving any of the Company Rights or taking any
> similar action under the Rights Agreement or waiving Section 203 of the DGCL),
> any Takeover Proposal or any inquiries or offers or the making of any proposal or
> any other efforts or attempt that could reasonably be expected to lead to a
> Takeover Proposal or (ii) enter into, continue or otherwise knowingly participate
> in any communications or negotiations regarding, or furnish to any Person any
> information with respect to, or otherwise knowingly cooperate in any way with
> any Person with respect to, any Takeover Proposal or any inquiries or offers or
> the making of any proposal or any other efforts or attempt that could reasonably
> be expected to lead to a Takeover Proposal.

44.     The Proposed Transaction lacks any of the fundamental hallmarks of fairness.

These acts, combined with other defensive measures the Company has in place, effectively

preclude any other bidders who might be interested in paying more than GSK for the Company,

and has the effect of limiting the ability of the Company's shareholders to obtain the best price

for their shares and compelling them to acquiesce to the Proposed Transaction or risk losing

more than that being offered by GSK.

45.     Any buy-out of HGS public shareholders by GSK on the terms offered, will deny

class members their right to share proportionately and equitably in the true value of HGS'

valuable and profitable business, and further growth in profits and earnings, at a time when the

Company is poised to increase its profitability.

46.     Furthermore, the Proposed Transaction deprives HGS' public shareholders of the ability to participate in the Company's long-term prospects and is designed to benefit HGS' insiders to the detriment of Plaintiff and the Company.

### HGS' Deficient Disclosures

47.     HGS fails to disclose whether the Company would be profitable or to what degree it would be profitable as an independent entity.  In fact, as set forth in the preceding paragraphs, HGS has achieved tremendous success with its products and is positioned for further increases in profitability in the future.

48.     The Company purports to rely upon a Fairness Opinion Letters from Goldman, Sachs and Credit Suisse (the "Financial Advisors").  However, the Fairness Opinions are fundamentally flawed as a result of the Defendants' failure to disclose the structure and substance of the compensation to be paid to the Financial Advisors, specifically whether the Financial Advisors' compensation is contingent upon consummation of the Proposed Transaction.  Moreover, the Defendants have failed to disclose the specific basis and methodologies used by the Financial Advisors in rendering their Fairness Opinion.  Given that the Financial Advisors' previously issued Fairness Opinions that GSK's previous efforts to purchase the outstanding shares of HGS for $13.00 was inadequate it is imperative that HGS' shareholders are provided with a basis to understand how the Financial Advisors rendered opinions that $14.25 per share is adequate.

49.     HGS also fails to disclose the identities of any of the other potential bidders, making it impossible for shareholders to determine whether another bidder might make a more suitable combination for the Company.

13

50.     Moreover, HGS fails to clearly set forth a true and complete list of all holders of outstanding Company options, restricted stock and all other equity or equity-based awards relating to Company common stock, the names of optionees or grantees thereof, the date each such option, restricted stock or other award was granted, the number of shares of Company common stock subject to each such option, restricted stock or underlying each such other award, the expiration date of each such option or other award, any vesting schedule with respect to a Company option or Company restricted stock which is not yet fully vested and the date on which each other award is scheduled to be settled or become free of restrictions, the price at which each such Company option may be exercised (or base price with respect to stock appreciation rights, if any), and the fair market value of one share of Company common stock on the date of grant of each of the foregoing.

## FIRST CAUSE OF ACTION

### Claim for Breaches of Fiduciary Duties Against the Individual Defendants

51.     Plaintiff repeats and re-alleges each allegation set forth herein.

52.     The Individual Defendants have violated the fiduciary duties of care and loyalty owed to the public shareholders of HGS and have acted to put their personal interests ahead of the interests of HGS shareholders or acquiesced in those actions by fellow Individual Defendants.  The Individual Defendants have failed to take adequate measures to ensure that the interests of HGS' shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides GSK with an unfair advantage by effectively excluding other alternative proposals.

53.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as part of a common plan and scheme, will unfairly deprive

14

Plaintiff and other members of the Class of the true value of their HGS investment.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of these Defendants are enjoined and a fair process is substituted.  These harmful acts include, *inter alia*, failing to disclose material information concerning the Proposed Transaction, agreeing to an offer without adequately shopping other potential bidders through, among other things, an action process.

54.     The Individual Defendants have breached their duties of candor, loyalty, entire fairness, good faith, and care by not taking adequate measures to ensure that the interests of HGS' public shareholders are properly protected from overreaching by GSK.

55.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

56.     As a result of the actions of the Individual Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive full and fair value for their ownership interest in HGS' stock and businesses.

57.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public stockholders, without providing sufficient and material information necessary to enable HGS' public shareholders to intelligently decide whether to tender their shares.

58.     The Individual Defendants have engaged in self-dealing, have not acted in good faith to Plaintiff and the other members of the Class, and have breached, and are breaching, fiduciary requirements to the members of the Class.

59.     Plaintiff and members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Against HGS, GSK and H. Acquisition Corp for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties

60.     Plaintiff repeats and re-alleges each allegation set forth herein.

61.     The Individual Defendants breached their fiduciary duties to the HGS stockholders by the actions alleged above.

62.     Such violations of law and breaches of fiduciary duties could not, and would not, have occurred but for the conduct of HGS, GSK and H. Acquisition Corp., which aided and abetted the breaches of the Individual Defendants' fiduciary duties to Plaintiff and the Class through entering into the Proposed Transaction.

63.     Defendants HGS, GSK and H. Acquisition Corp., had knowledge that they are and were aiding and abetting the Individual Defendants' breaches of their fiduciary duties to HGS stockholders.

64.     Defendants HGS, GSK and H. Acquisition Corp., rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties owed to HGS stockholders.

65.     As a result of HGS, GSK and H. Acquisition Corp.'s wrongful conduct, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a full and fair price for their HGS shares.

66.     As a result of the unlawful actions of Defendants HGS, GSK and H. Acquisition Corp., Plaintiff and the other members of the Class will be irreparably harmed in that they will

be prevented from obtaining the full and fair value of their equity ownership in the Company.

Unless enjoined by the Court, HGS, GSK and H. Acquisition Corp., will continue to aid and abet

the Individual Defendants' violations and breaches of their fiduciary duties, and will aid and abet

a process that inhibits the maximization of stockholder value and the disclosure of material

information.

67.     Plaintiff and the other members of the Class have no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully

protected from immediate and irreparable injury which defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief,

including injunctive relief, in her favor and in favor of the Class and against defendants as

follows:

A.      Declaring that this action is properly maintainable as a class action, and certifying

Plaintiff as class representative;

B.      Enjoining defendants, their agents, counsel, employees and all persons acting in

concert with them from consummating the Proposed Transaction, unless and until the Company

adopts and implements a procedure or process to obtain the highest possible price for

shareholders and, if the transaction is consummated, rescinding the transaction;

C.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a

transaction that is in the best interests of HGS' public shareholders and to refrain from entering

into any transaction until the process for the sale or auction of the Company is completed and the

highest possible price is obtained;

D.      Imposing a constructive trust, in favor of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

E.      Awarding Plaintiff and the Class compensatory damages and/or rescissory damages;

F.      Awarding Plaintiff the costs and disbursements of this action, including a reasonable allowance for Plaintiff's attorneys' fees, expenses and experts' fees; and

G.      Granting such other and further relief as this Court may deem to be just and proper.

Dated:  July 24, 2012                                   Respectfully submitted,

                                                        **O'KELLY ERNST BIELLI & WALLEN, LLC**

                                                        */s/ Ryan M. Ernst*_____
                                                        Ryan M. Ernst (I.D. No. 4788)
                                                        901 N. Market Street
                                                        Suite 1000
                                                        Wilmington, DE 19801
                                                        (302) 778-4000
                                                        (302) 295-2873 (Facsimile)
                                                        rernst@oebwlegal.com
                                                        *Attorneys for Plaintiff*

**OF COUNSEL**

Joseph H. Weiss
James E. Tullman
Joshua M. Rubin
WEISS & LURIE
1500 Broadway, 16th Floor
New York, NY  10036
Tel.:  (212) 682-3025
Fax:  (212) 682-3010